Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
and the Putative Class

UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW BOEHM, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VW CREDIT LEASING LTD., a Delaware Corporation, VW CREDIT, INC., a Delaware Corporation,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ANDREW BOEHM, individually and on behalf of others similarly situated, bring this Class Action Complaint against Defendant VW CREDIT LEASING LTD., and VW CREDIT, INC. ("Defendants" or "VW") and make the following allegations based on personal knowledge as to facts pertaining to her own experiences, and on information and belief as to all others:

**NATURE OF THE ACTION**

1. Plaintiff thought he had a closed end lease agreement, as he was led to believe by Defendants in signing such a contract with Defendants. But Defendants breached the contract by converting the contract to an open end lease, causing damages to Plaintiff and the class.

2. Plaintiffs and Class members have entered close end lease agreements with Defendants. At the end of the lease agreement, Plaintiff and the Class wish to exercise their proper rights to sell the lease option to a third party.

3. However, Defendants inexplicably and wrongfully attempt to convert the lease to an open end lease.

4. Defendants not only blatantly disregard the contract, but they also interfere with Plaintiff's market transactions.

5. Despite disclosing the purchase option price pursuant to 15 U.S.C. § 1667(a)(5) and 12 CFR § 213.4(i), Defendants wrongfully raised the price.

6. When Plaintiff and the Class actually go forward trying to sell the value of their contract, not only did Defendants wrongfully changed the contract price, but Defendants also *hide their wrongfully altered price from consumers*.

7. Defendants engage in false advertising and inexplicably deprive Plaintiff and the Class of their clear rights under the contract and consumer protection statutes.

8. Plaintiff therefore seeks to represent a class of similarly situated victims to obtain actual, statutory, exemplary damages, restitution, and an injunction requiring Defendant to stop violating federal and state consumer protection laws.

**PARTIES**

9. Plaintiff ANDREW BOEHM ("Mr. Boehm") is a natural person residing in Omaha, Nebraska.

10. Defendant VW CREDIT, INC. is an entity number 911551 organized and existing under the laws of the state of Delaware with its principal place of business at 1401 Franklin Blvd. Libertyville, IL, 60048-4460.

11. Defendant VW CREDIT LEASING LTD. is entity number 3050896 organized and existing under the laws of the state of Delaware with its principal place of business at 1401 Franklin Blvd. Libertyville, IL, 60048-4460.

**JURISDICTION AND VENUE**

12. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under 15 U.S.C. § 1667, et. seq., the Consumer Leasing Act, ("CLA"). Declaratory Relief is available pursuant to 28 U.S.C. § 2201 and 2202.

13. The Court has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a). They are so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

14. This Court has specific personal jurisdiction over Defendants because this litigation is a result of Defendants' business activities in Omaha, Nebraska.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants' wrongful conduct took place in this District.

**COMMON FACTUAL ALLEGATIONS**

16. Defendants advertise to the general public that they offer closed end lease agreements.

17. Plaintiff and the class signed closed end auto leases with Defendants.

18. Closed end lease agreements under $25,000 are regulated under the Consumer Lending Act.

19. Defendants fail to properly disclose and adhere to the purchase option pursuant to 15 U.S.C. § 1667(a)(5) and 12 CFR § 213.4(i),

20. Defendants purport to disclose the statutorily required price in their consumer lease agreement, but they wrongfully change the price without notice.

21. Defendants breached the contract and wrongfully altered price they previously disclosed, causing an interference with Plaintiff's contract with a third party.

22. Plaintiff and the class incurred damages due to Defendants' breach and false advertising.

**FACTS SPECIFIC TO MR. ANDREW BOEHM**

23. In July 2018, Mr. Boehm began shopping for a new auto lease in Omaha, Nebraska. He visited several dealerships, including Baxter VW of Omaha.

24. Plaintiff and the sales agent discussed that he sought a closed end lease agreement.

25. On July 31, 2018, Mr. Boehm entered into a lease agreement with Defendants through their sales agent in at Baxter VW of Omaha in Omaha, Nebraska.

26. Towards the end of Plaintiff's lease, Plaintiff tried to sell his lease option to a third party.

27. In advance of preparing to sell his contract, Plaintiff logged onto Defendants' website portal several times and requested his lease payoff amount.

28. Plaintiff was planning to purchase a Tesla, and he received a trade-in quote of $17,800.

29. If Plaintiff accepted the offer from Tesla, it would also save him $1,246 in sales taxes that he would have to pay for the new car. Therefore, the Tesla offer was effectively worth $19,046.

30. Plaintiff also went online to Vroom, who offered to buy the car for $18,000.

31. Plaintiff examined the paperwork for a deal with Vroom, he was shocked that the paperwork with the Vroom deal did not match what Plaintiff expected.

32. The Vroom contract said that Plaintiff would be required to "pay the difference to Vroom." Plaintiff would expect to receive a check from Vroom, not have to pay the difference to Vroom.

33. It appeared that Defendants were unilaterally raising the price of the purchase option and hiding that fact (and their new price) from Plaintiff.

34. Plaintiff called and asked Defendants what price they were trying to sell the car for, but they refused to tell Plaintiff. Defendants said that they would only provide that information to the third party via fax.

35. Therefore, Defendants violated the CLA by failing to properly disclose the purchase option, as alleged above. Defendants have also violated Section 213.4(g)(1) requiring a full description of the method of determining an early termination charge.

36. Defendants' errors were willful.

37. Because of Defendants' wrongful conduct, Plaintiff and the Class were unable to sell their lease option to a third party and instead had to incur market and incidental losses.

38. Despite having a ready and willing buyer, Defendants required Plaintiff personally to ship a check via Fedex Overnight and advance the full cost of the purchase.

39. Defendants then took 6 (six) weeks to process Plaintiff's payment.

40. By the time Plaintiff waited for Defendants to finalize the paperwork, Tesla had revoked their offer to purchase.

41. Plaintiff had to pay $931.88 in additional sales tax to complete the transactions.

42. Because he could not do a simple trade-in with Tesla, which he could have completed personally by driving himself, Plaintiff also had to have another person drive with him to help him pick up his new car over 300 miles away and back. Plaintiff had to pay extra for gas and a hotel room.

43. Finally, Plaintiff took his car to Carmax, who purchased it for $18,000.

44. As a result of the above violations of CLA, Defendants are liable to Plaintiff for declaratory judgment that Defendants' conduct violated the CLA, and are liable for the Plaintiff's actual damages, statutory penalties, costs and attorney's fees.

## CLASS ALLEGATIONS

45. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and the Class defined as follows:

> **VW Lessee Class**. All persons who leased a vehicle from Defendants within the last four years of the filing of the Complaint

46. The following people and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons and entities who properly execute and file a timely request for exclusion from the Class; (4) persons and entities whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons and entities.

47. Plaintiff reserves the ability to modify the definition of the proposed Class before the Court determines whether class certification is warranted.

48. The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

49. The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

50. **Numerosity**: The exact number of members of the Class is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants enter into tens of thousands of leases per year with Plaintiff and Class Members who are denied alienation. Members of the Class can be identified through Defendants' records or by other means.

51. **Commonality:** Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members to as to whether Defendants interfered with the market transactions of Plaintiff and the Class by wrongfully withholding permission to alienate the lease.

52. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct in the form of Defendant wrongfully controlling Plaintiff's property.

53. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and are subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so.

54. **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

55. **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for the Class include, but are not necessarily limited to the following:

   i. Whether Defendants made CLA disclosures to Plaintiff and the Class;
   
   ii. Whether Defendants' conduct violates the Consumer Leasing Act, 15 U.S.C. § 1667, UCC § 2-708, Neb. Revised § 87-302(a)(5) and (10), and constitute Fraudulent Omission and False Advertising;
   
   iii. The method of calculation and extent of damages for Plaintiff and the Class members;

56. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

**COUNT I**
**CONSMER LEASING ACT**
**Regulation M -- 15 U.S.C. 1667 et. seq.**
**(On Behalf of Plaintiff and the Class)**

57. Plaintiff incorporates paragraphs 1–56 as if fully set forth herein.

58. Defendants are creditors under CLA as they are in the business of regularly obtaining credit for consumers in the process of leasing vehicles. Plaintiff and the class leased a vehicle from Defendants.

59. Defendants were required to disclose the purchase option pursuant to 15 U.S. Code § 1667(a)(5).

60. Plaintiff and the class leased a vehicle from Defendants.

61. The lease document disclosed the purchase option under 15 U.S. Code § 1667(a)(5) and 12 CFR § 213.4(i) as $13,312.50 with $0 fees. Defendants were required under Section 213.4(g)(1) to disclose a full description of the method of determining an early termination charge.

62. When Plaintiff and the Class attempted to sell their lease to a third party, Defendants pulled a bait and switched and raised the purchase option amount to a unilaterally determined amount.

63. Defendants violated the CLA by failing to properly disclose the purchase option and the method of calculation of termination fees, as charged against Plaintiff when he tried to sell his car to a third party, as alleged above.

64. Defendants' errors were willful.

65. Because of Defendants' wrongful conduct, Plaintiff and the Class were unable to sell their lease option to a third party and instead had to incur significant unnecessary costs and time. Defendants held the sale up for 6 weeks while processing Plaintiff's paperwork.

66. As a result of the above violations of CLA, Defendants are liable to Plaintiff for declaratory judgment that Defendants' conduct violated the CLA, and are liable for the Plaintiff's actual damages, statutory penalties, costs and attorney's fees.

67. WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT II
## FALSE ADVERTISING
**(On Behalf of Plaintiff and the Class)**

68. Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

69. During the sales process, Defendants' sales agents explained that the lease contract included a fully valid purchase option that Plaintiff could exercise at the end of the lease. Defendants hid that their true intent was to violate the contract and entirely refuse to cooperate with the exercising of the option if Plaintiff desired to sell the option to a third party.

70. Plaintiff relied on Defendants' concealment to his detriment.

71. Defendants unreasonably refused to permit Plaintiff to sell his lease contract to a third party.

72. Based on these omissions, Plaintiff and the class incurred damages.

73. Plaintiff would never have leased the car from Defendants if they had told him that they would refuse cooperation when he tried to sell the purchase option.

74. Defendants' conduct was willful, wanton and oppressive entitling Plaintiff to punitive damages, in an amount sufficient to deter Defendants from future misconduct.

75. WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT III
## FRAUDULENT OMMISSION
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff incorporates paragraphs 1–75 as if fully set forth herein.

77. During the sales process, Defendants represented that the lease contract included a fully valid purchase option that Plaintiff could exercise at the end of the lease. Defendants hid that their true intent was to violate the contract and entirely refuse cooperation if Plaintiff desired to sell his purchase option to a third party.

78. Plaintiff relied on Defendants' concealment to his detriment.

79. Defendants unreasonably refused to permit Plaintiff to sell his lease contract to a third party.

80. Based on these omissions, Plaintiff and the class incurred damages.

81. Plaintiff would never have leased the car from Defendants if they had told him that they would refuse cooperation when he tried to sell the purchase option.

82. Defendants' conduct was willful, wanton and oppressive entitling Plaintiff to punitive damages, in an amount sufficient to deter Defendants from future misconduct.

83. WHEREFORE, Plaintiff prays for judgment as set forth below.

**COUNT IV**
**Violation of Neb. Revised § 87-302(a)(5) and (10)**
**NEBRASKA DECEPTIVE TRADE PRACTICES ACT ("DTPA")**
**(on Behalf of Plaintiff and the Class)**

84. Plaintiff incorporates paragraphs 1–83 as if fully set forth herein.

85. The DTPA prohibits a specific list of deceptive business practices.

86. Neb. Revised § 87-302(a)(5) prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

87. Neb. Revised § 87-302(a)(10) prohibits advertising goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person.

88. VW violated these provisions by explaining that the lease included a valid purchase option, but VW refused to cooperate and instead unilaterally increased the price when Plaintiff tried to sell his lease option.

89. Plaintiff was instead forced to incur market losses and unnecessary costs and delays in personally exercising the purchase option and proceeding to sell the car to the next highest bidder after the first bid had expired.

90. WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT V
### Breach of Contract or the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

91. Plaintiff incorporates paragraphs 1–90 as if fully set forth herein.

92. Plaintiff and the Class members viewed Defendants' federally mandated disclosures, including the purchase option.

93. Based on these representations, Plaintiffs and the Class leased a vehicle from VW. Plaintiffs and members of the Classes were entitled to the purchase option either pursuant to the express contract or through the implied covenant of good faith and fair dealing.

94. However, as described above, Defendants breached the contract, or Plaintiff and members of the Class did not receive the expected benefits under the terms of their contracts.

95. Plaintiff and members of the Classes suffered damages as a result of Defendants' breach of the contract or implied covenant of good faith and fair dealing, as Defendants' charged an early termination fee or raised the previously disclosed purchase option price.

96. WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT VI
### INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP
### (on Behalf of Plaintiff and the Class)

97. Plaintiff incorporates paragraphs 1–96 as if fully set forth herein.

98. Plaintiff accepted an offer from Tesla and had a valid relationship or expectancy in accepting the quote and trading in his car with Tesla.

99. Defendants knew that Plaintiff wanted to sell his car to Tesla.

100. Defendants unreasonably refused to cooperate with Plaintiff's valid sale to Tesla.

101. Defendants' unreasonable refusal was interference that caused harm to Plaintiff.

102. As a result of these violation, Plaintiff incurred market losses and unnecessary costs and fees in purchasing his car and then selling the car to the second best option.

103. WHEREFORE, Plaintiff prays for judgment as set forth below.

**COUNT VII**
**UCC- § 2-708 – Seller's Damages**
**(on Behalf of Plaintiff and the Class)**

104. Plaintiff incorporates paragraphs 1–103 as if fully set forth herein.

105. Plaintiff planned to purchase a new car from Tesla and in the process, he received a quote from Tesla to purchase his previous car as part of a trade in.

106. Plaintiff expected to profit by $5,734 by selling his car to Tesla for $17,800. Because this trade-in would reduce the amount of sales tax Plaintiff owed by $1,246, the Tesla offer was actually equivalent to an offer for $19,046.

107. Defendants disrupted the sale by unreasonably refusing to cooperate with the sale to Tesla.

108. Defendants caused a six week delay while Plaintiff waited for Defendants to transfer the title to Plaintiff.

109. By the time Plaintiff received the title, Tesla's quote had expired.

110. Plaintiff was forced to sell his car at the next best option, to Carmax, for $18,000, or $1,046 less than he was expecting.

111. Plaintiff was also forced to incur incidental costs because he had to have his wife drive an additional car with him to the dealership.

112. Therefore, Plaintiff's damages are $1,046 plus incidental costs.

113. WHEREFORE, Plaintiff prays for judgment as set forth below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class defined above, pray for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the Consumer Leasing Act, 15 U.S.C. § 1667, UCC § 2-708, Neb. Revised § 87-302(a)(5) and

        (10), and constitute Breach of Contract or the Implied Covenant, Fraudulent Omission and False Advertising;

C.    An order awarding an injunctive and declaratory relief, other equitable relief, and damages to Plaintiff and the Class, including punitive damages;

D.    An award of reasonable attorney's fees and costs pursuant to 15 U.S.C.S. § 1640(a)(3);

E.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 12, 2021        Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*