IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW BOEHM, individually, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>VW CREDIT, INC., a Delaware Corporation; and VW CREDIT LEASING LTD., a Delaware Corporation;<br><br>Defendants. | **8:21CV406**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Defendants' motion to compel arbitration. (Filing No. 14). For the reasons stated below, Defendants' motion will be granted.

BACKGROUND

On July 31, 2018 Plaintiff Andrew Boehm, a Nebraska resident, entered into a closed end motor vehicle lease ("Lease") with Baxter VW of Omaha. The Lease was assigned to VW Credit Leasing Inc., which thereafter assigned its rights under the Lease to VCI Account Services, LLC. (Filing No. 16-1 at CM/ECF p. 2). VW Credit, Inc. maintains and services Plaintiff's account associated with the Lease on behalf of VW Credit Leasing, Ltd., and then VCI Account Services, and is thus the agent of VW Credit Leasing, Ltd. and VCI Account Services, LLC. (Id.)

Bringing this action on behalf of himself and the putative class of all others similarly situated, Plaintiff's first claim alleges Defendants violated the Consumer Leasing Act ("CLA") 15 U.S.C § 1667 et seq. by not disclosing material terms of the Lease. (Filing No. 1 at CM/ECF p. 8). Specifically, Plaintiff alleges Defendants

violated the CLA by "failing to properly disclose the purchase option and the method of calculation of termination fees" which would be charged against Plaintiff when he tried to sell the leased vehicle to a third party. (Id.)

Plaintiff alleges a claim for false advertising (Claim Two) and a claim for fraudulent omission (Claim Three). Plaintiff alleges that the sales agents informed him of a purchase option he could exercise at the end of the lease but did not tell him Defendants would not cooperate with the sale of the purchase option to a third party. He alleges Defendants "hid that their true intent was to violate the contract and entirely refuse cooperation if Plaintiff desired to sell his purchase option to a third party." (Filing No. 1 at CM/ECF p. 9). Claim Four alleges violations of the Nebraska Deceptive Trade Practices Act ("NDTPA"), § 87-302(a)(5) and (10). (Filing No. 1 at CM/ECF p. 10). Plaintiff also alleges claims for breach of contract or the implied covenant of good faith and fair dealing (Claim Five), and intentional interference with a business relationship (Claim Six). (Filing No. 1 at CM/ECF p. 11).

Defendants seek to enforce the arbitration provision contained in the Lease between Plaintiff and Baxter VW of Omaha, which was subsequently assigned and serviced by Defendants. (See Filing No. 16-2). As of the date of this order, Plaintiff has not responded to Defendants' motion, and the time for doing so has passed. Plaintiff has not requested leave to respond out of time. The motion is deemed fully submitted.

ANALYSIS

Arbitration is favored and this court's role is to engage in a limited inquiry to "determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." Larry's

United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001). If the court so finds, Section 3 of the Federal Arbitration Act requires a stay of proceedings subject to an arbitration agreement, and Section 4 empowers the court to compel the parties to proceed with arbitration. 9 U.S.C. §§ 3, 4. "The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied." Green Tree Financial Corp. -Alabama v. Randolph, 531 U.S. 79, 91 (2000).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986); Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 479 (1989) (stating Arbitration is "a matter of consent, not coercion," and if the parties have not "agreed to arbitrate, the courts have no authority to mandate that they do so."); see also Churchill Environmental and Indus. Equity Partners, L.P. v Ernst & Young, L.L.P., 643 N.W.2d 333, 336 (Minn. Ct. App. 2002)(citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 242 F.3d 780, 782 (8th Cir. 2001)). When deciding whether to compel arbitration, a two-part test is applied. United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 787 (8th Cir. 2005) The court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649.

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). Section 2 gives States a method for protecting customers against unfair pressure to agree to a contract with an unwanted

arbitration provision," if the contract violates state law. Id. citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 at 281 (1995). The Federal Arbitration Act, as a matter of federal law, requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); Teamsters Local Union No. 688, 186 F.3d at 881 ("[W]hen an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.").

I.    Validity and Enforceability

a.  Arbitration Clause

The initial question is whether a valid agreement to arbitrate exists between Plaintiff and Defendants and whether the claims raised in Plaintiff's complaint fall within the scope of that agreement. Madol v. Dan Nelson Auto Grp., 372 F.3d 997, 1000 (8th Cir. 2004). In support of their motion, Defendants submitted the affidavit of Matthew Birmingham, a Customer Service Operations Manager at VW Credit Inc. Birmingham attested to the contents of the Lease Agreement ("Lease"). Defendants also submitted the Lease, signed by Plaintiff.[1]

At the top of page 5 of the Lease, a separate section is clearly labeled "ARBITRATION PROVISION." The next line reads "PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS." (Filing No. 16-2 at CM/ECF p. 5). Under the text of the arbitration provision, the Lease states:

---

[1] Plaintiff did not respond to Defendant's motion to compel arbitration, but the Complaint alleges and acknowledges that Plaintiff signed a closed end auto lease with Defendants. (Filing No. 1 at CM/ECF p. 4). It is undisputed that the Lease between Baxter and VW of Omaha was assigned and/or serviced by Defendants.

> **Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision, Item 26 above, you or we may elect to resolve any dispute by neutral binding arbitration and not by court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

(Filing No. 16-2 at CM/ECF p. 5). The agreement includes any dispute "between you or us or our employees, agents, successors or assigns," which would include the named Defendants in this action. The document indicates that provision was e-signed by Plaintiff. On that same page, Plaintiff's name and signature appear under the heading "LESSEE SIGNATURES." (Id).

In similar cases, a party opposing arbitration frequently argues the agreements are procedurally or substantively unconscionable. Upon my review, the terms of this agreement are not manifestly unfair. Both parties have the ability to elect arbitration for the resolution of "any claim or dispute" and the terms apply equally to all parties. There is no evidence in the record that Plaintiff was in any way coerced into signing the arbitration agreement and the arbitration terms are not worded as a "take it or leave it" adhesion contract. And even if they were, that fact would not automatically deem the agreement unenforceable. See Cicle, 583 F.3d at 555 ("Because the bulk of contracts signed in this country are form contracts—'a natural concomitant of our mass production-mass consumer society'—any rule automatically invalidating adhesion contracts would be 'completely unworkable.' ").

The Arbitration Provision allows customers to "opt out" by sending written notice of opt out to VW Credit Leasing Ltd. within 15 days of the date of the lease. Birmingham's affidavit states Defendants did not receive notice from Plaintiff rejecting the arbitration clause within 15 days of the execution of the Lease. (Filing

No. 16-1 at CM/ECF p. 2). Plaintiff had the opportunity to read and review the arbitration provision and opt out, and still be allowed to enter into the Lease with Defendants. The arbitration agreement at issue is valid and enforceable.

b.  Class Action Waiver

Plaintiff brings this action on behalf of himself, and others similarly situated. However, the arbitration provision includes a class action waiver. The line under the "Arbitration Provision" heading of the Lease states "PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS." (Filing No.. 16-2 at CM/ECF p. 5). Specifically, it provides:

2.  If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation of individual arbitrations.

(Filing No. 16-2 at CM/ECF p. 5).

The Supreme Court and the Eighth Circuit have enforced class action waivers in arbitration agreements even when such actions are permitted under federal statutes, stating that statutory permission for class actions does "not mean that individual attempts at conciliation were intended to be barred." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32, (1991). The Supreme Court has stated that class arbitration "sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 238, (2013); Additionally, the court has rejected the argument that class arbitration is necessary to prosecute claims that "might otherwise slip through the legal system." Id. The Eighth Circuit has found that class action waivers are not substantively unconscionable where the arbitration clause does

not limit Plaintiff's individual remedies. See Pleasants v. American Exp. Co, 541 F.3d 853 at 858 (8th Cir. 2008)

Here, the class action waiver is unequivocal, and the agreement provides that the parties retain the right to seek remedies in small claims court for disputes or claims within the court's jurisdiction unless the action is transferred, removed, or appealed to a different court. The terms of the agreement apply equally to the parties and the Plaintiff had the opportunity to opt out of the arbitration provision but did not elect to do so. Therefore, only Plaintiff's claims against Defendants are eligible for arbitration.

II.    Scope

Having found that there is a valid agreement to arbitrate, the court must consider whether Plaintiff's claims fall within the scope of the arbitration clause. In resolving this issue, the first question is "whether the arbitration clause is broad or narrow." Parm v. Bluestem Brands, Inc., 898 F.3d 869, 874 (8th Cir. 2018) "If the clause is broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration ... as long as the underlying factual allegations simply touch matters covered by the arbitration provision." Id.

Here, the arbitration provision provides:

Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you or us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who did not sign this Lease) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

(Filing No. 16-2 at CM/ECF p. 5).

Arbitration clauses covering claims "arising out of" or "relating to" an agreement are considered broad. Zetor N. Am., Inc. v. Rozeboom, 861 F.3d 807, 810 (8th Cir. 2017). And since Plaintiff's claims arise out of or relate solely to the terms and enforcement of the "Closed End Motor Vehicle Lease" Plaintiff allegedly signed, the claims are undoubtedly included in the scope of the broadly worded arbitration agreement.

The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied, and there has been no resistance to the instant motion. The court will stay this action in the federal court and compel arbitration under the terms of the Lease Agreement and associated Arbitration Provision.

Accordingly,

IT IS ORDERED:

1) Defendants' unopposed Motion to Compel Arbitration is granted. (Filing No. 14).

2) Plaintiff's claims shall be promptly submitted to binding arbitration in accordance with the arbitration clause quoted and discussed in this opinion.

3) Plaintiff's claims are stayed pending arbitration. Every 90 days from the date of this order, counsel shall file a joint status report with the court regarding the progress of the arbitration proceedings.

4) The clerk shall administratively close this case and set a March 21, 2022 case management deadline.

Dated this 20th day of December, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge